**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No.: 21-cv-23709-COOKE/DAMIAN

WILSON VILLA,
*and other similarly situated individuals*,

    Plaintiff,

vs.

TURCIOS GROUP CORP,
HENRY TURCIOS, *individually*,
CONTRACTORS ELECTRICAL SERVICES,
INC., and LEONARDO RODRIGUEZ,

    Defendants,
_____/

**ORDER GRANTING THE PARTIES' JOINT MOTION
TO APPROVE SETTLEMENT AND DISMISSAL WITH PREJUDICE AS TO
DEFENDANTS CONTRACTORS ELECTRICAL SERVICES, INC. AND
<u>LEONARDO RODRIGUEZ [ECF NO. 40]</u>**

THIS CAUSE is before the Court on Plaintiff, Wilson Villa's ("Plaintiff"), and Defendants, Contractors Electrical Services, Inc.'s ("CES"), and Leonardo Rodriguez's ("Mr. Rodriguez"), (collectively, the "CES Defendants"), Joint Motion to Approve Settlement and Dismissal With Prejudice (the "Joint Motion"). [ECF No. 40]. This matter is before the Court upon the Parties' Joint Notice of Consent to Jurisdiction by United States Magistrate Judge. [ECF No. 46]. *See* 28 U.S.C. § 636(c).

The Court has considered the Joint Motion, the proposed Settlement Agreement and Mutual General Release [ECF No. 40-1], the pertinent portions of the record, and relevant legal authorities. The Court also heard from the parties, who appeared through counsel, by Zoom, for a Fairness Hearing on July 12, 2022, and is otherwise fully advised in the premises.

For the reasons set forth below, the Joint Motion is granted, the Settlement Agreement is approved, and the case is dismissed with prejudice as to the CES Defendants.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 2021, Plaintiff brought a collective action against the other named Defendants in this action, Turcios Group Corp. and Henry Turcios (collectively, the "Turcios Defendants"), to recover alleged unpaid overtime wages, liquidated damages, and attorney's fees and costs, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* [ECF No. 1]. In the Statement of Claim filed on November 11, 2021, Plaintiff alleged he is owed $35,644.60 in unpaid overtime wages for the relevant period of employment, plus an equal amount in liquidated damages under the FLSA. [ECF No. 5]. Therefore, the total amount Plaintiff alleged in the Statement of Claim is $71,289.20, inclusive of unpaid overtime wages and liquidated damages. *Id.*

On January 13, 2022, the Court held a Settlement Conference between Plaintiff and the Turcios Defendants that resulted in an impasse. [ECF No. 20]. Thereafter, on February 24, 2022, Plaintiff filed a First Amended Complaint and added the CES Defendants as defendants. [ECF No. 25 (the "Amended Complaint")].

According to the allegations in the Amended Complaint, the Turcios Defendants and the CES Defendants hired Plaintiff as a full-time electrician from June 2013 through August 16, 2021. *Id.* at ¶¶ 18–19. For purposes of the FLSA claims, Plaintiff alleges the relevant period of employment is from October 2018 to August 2021, totaling 147 weeks. *Id.* at ¶ 17. Plaintiff alleges he was paid $18.00 per hour during this period[1] and that his overtime rate should be

---

[1] Notably, in the initial Complaint, Plaintiff alleges he was paid $13.50 per hour from October 18, 2018 to August 15, 2020, and was later paid $16.00 per hour from August 16, 2020 to his last day of employment. [ECF No. 1, at ¶¶ 9–12].

2

$27.00 per hour. *Id.* at ¶ 18. Plaintiff also alleges that Turcios Group and CES are a joint enterprise and acted as joint employers of Plaintiff. *Id.* at ¶¶ 12–13. Plaintiff claims he worked five days per week, Monday to Friday, from 6:30 A.M. to 4:30 P.M. (10 hours daily) for 95 weeks, from October 18, 2018, to August 15, 2020. *Id.* at ¶ 20. Plaintiff further claims that he worked six days per week on the same time schedule from August 16, 2020, through his last day of employment, on August 16, 2021. *Id.* at ¶ 21.

Based on these allegations, Plaintiff claims he worked a total of 47.5 hours per week during the 95-week period from October 2018 to August 2020 and 57 hours per week during his last year of employment with Defendants.[2] Despite working more than forty hours weekly during the relevant employment period, Plaintiff alleges Defendants did not pay him overtime wages (at the statutory time and a half rate of $27.00 per hour) for the hours he worked in excess of forty (40) hours per week. *Id.* at ¶ 23. Therefore, in the Amended Complaint (unlike the amount originally sought in the Statement of Claim), Plaintiff seeks a total of $43,105.50 in alleged unpaid overtime wages, plus an equal amount in liquidated damages, and attorney's fees and costs. *Id.* at ¶ 49.

Following a Court-ordered mediation held on April 29, 2022, Plaintiff reached separate settlement agreements with the Turcios Defendants and the CES Defendants, respectively. [ECF Nos. 38, 39]. On May 24, 2022, Plaintiff and the CES Defendants submitted the Joint Motion now before the Court seeking approval of the parties' proposed settlement agreement, pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th

---

[2] Plaintiff deducted a total of 2.5 hours of lunchtime each week during the 95-week period and 3 hours of lunchtime each week during the last year of employment. *Id.* at ¶¶ 20–21.

Cir. 1982), and dismissal of the action with prejudice conditioned upon the Court retaining jurisdiction for a period of forty-five (45) days to enforce the terms of the settlement agreement. *See* Joint Motion at 5.

In the Joint Motion, the CES Defendants dispute Plaintiff's allegations and assert that Plaintiff was employed by them until February 2022, when Plaintiff was furloughed, and that Plaintiff returned to work in May 2022 until he ceased working on September 9, 2022. *Id.* at 2. The CES Defendants further assert they paid Plaintiff through their payroll processing company, and they contend that Plaintiff continued working for the Turcios Defendants after September 9, 2022, for which he was paid exclusively by the Turcios Defendants. *Id.*

Despite contesting Plaintiff's allegations, the CES Defendants agreed to settle Plaintiff's FLSA claims to avoid the costs of protracted litigation. *Id.* at 3. In the Joint Motion, the Parties agree that the proposed settlement represents a fair and reasonable compromise of Plaintiff's claims given the factors outlined in *Lynn's Food Stores. Id.* at 3–4. The Joint Motion also indicates that the complexity, expense, and likely duration in litigating the disputed claims weigh in favor of approval of the proposed settlement agreement, as the Parties were able to reach a settlement after considerable negotiation and exchanging information such as time and pay records. *Id.* at 4.

## II.     APPLICABLE LEGAL STANDARDS

Section 206 of the FLSA establishes the federally mandated minimum hourly wage, and Section 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. 29 U.S.C. §§ 206, 207. An employer who violates the FLSA is liable to its employee for both unpaid minimum wages or overtime compensation and for an equal amount in liquidated damages.

29 U.S.C. § 216(b). The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived" between employers and employees. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Nevertheless, there two ways in which claims arising under the FLSA can be settled or compromised by employees: (1) if the payment of unpaid minimum wage/overtime pay is supervised by the Secretary of Labor; or (2) in a private lawsuit brought by an employee against his or her employer, if the parties present the district court with a proposed settlement agreement and the district court enters a stipulated judgment after scrutinizing the settlement for fairness. *See* 29 U.S.C. 216(c); *Lynn's*, 679 F.2d at 1352–53.

The Eleventh Circuit has held that the compromise of FLSA claims is allowed under the following circumstances:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's*, 679 F.2d at 1354. Thus, an employee may compromise a claim if the district court determines that the compromise "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355.

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee (*i.e.*, "internal" factors), and

whether the settlement frustrates the purpose of the FLSA (*i.e.*, "external" factors). Factors considered "internal" include:

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of the counsel.

*Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see also Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241–44 (M.D. Fla. 2010). There is a "'strong presumption' in favor of finding a settlement fair." *Walker v. Kirkman Mgmt., LLC*, No. 20-1149, 2022 WL 1037369, at * 2 (M.D. Fla. Mar. 18, 2022) (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)). Additionally, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

### III. DISCUSSION

With the foregoing in mind, the Court considers the Parties' proposed settlement agreement for fairness.

#### A. *The Settlement Amount*

Pursuant to the proposed Confidential Settlement Agreement and Mutual General Release (the "Agreement"), the CES Defendants have agreed to pay Plaintiff a total sum of $4,000.00. Agreement at ¶ 4a–b. The CES Defendants have also agreed to pay $3,500.00 to Plaintiff's counsel for attorney's fees and costs. *Id.* at ¶ 4c. Additionally, the CES Defendants agreed to pay their share of the mediator's fees plus half of Plaintiff's portion of mediator's fees. *Id.* The Agreement does not specify the amount of mediator's fees due from Plaintiff.

6

As indicated above and in the Amended Complaint, Plaintiff sought $43,105.50 for alleged unpaid overtime wages and an equal amount in liquidated damages. The settlement amount, exclusive of the payment for attorney's fees and costs, is approximately five percent (5%) of the amount originally sought by Plaintiff. *See* Amended Complaint. However, because Plaintiff reached a separate settlement with the Turcios Defendants, for the same settlement amount ($4,000.00), Plaintiff is recovering approximately ten percent (10%) of his original claim. *See* ECF No. 42. Moreover, both parties are represented by counsel and agree the negotiated terms of the Agreement are fair and reasonable considering the strengths and weaknesses of the Parties' respective positions on the FLSA claims. *See* Joint Motion at 4.

The Court has scrutinized the terms of the Agreement considering the above referenced factors and heard from the Parties, through their counsel, at a Fairness Hearing held by Zoom on July 12, 2022. Based on the Parties' representations and their expressed concerns regarding the alleged FLSA claims, the Court finds the settlement amount represents a fair and reasonable resolution of a bona fide dispute between the Parties under all the circumstances presented and that Plaintiff has not unfairly compromised his FLSA claims. The Court also finds the Agreement promotes the policy of encouraging settlement of litigation of FLSA claims. *Lynn's*, 679 F.2d at 1354.

Having found the settlement amount is fair and reasonable, the Court addresses the specific terms of the Agreement.

**B.** *Attorney's Fees and Costs*

As part of the Agreement, Plaintiff's counsel will receive a total of $3,500.00 from the CES Defendants for attorney's fees and costs. *See* Agreement at ¶ 4c. The CES Defendants also agreed to pay half of Plaintiff's portion of the mediator's fees. *Id.* at ¶ 4. In an FLSA

action, the court "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In the Joint Motion, the Parties do not specify whether this amount was negotiated separately from the amount paid to Plaintiff for his FLSA claims. Nevertheless, the Parties state that "Plaintiff's recovery was not adversely affected by the amount of attorneys' fees paid to counsel," such that Plaintiff agreed the settlement amount was fair, separate and apart from consideration of the fees and costs paid to his counsel. Joint Motion at 5. Moreover, at the Fairness Hearing, counsel for the Parties confirmed that the fee amount was negotiated separate and apart from the amount paid to Plaintiff for his FLSA claims.

Based on the Parties' representation that Plaintiff's attorney's fee was agreed upon separately and without regard to the amount paid to Plaintiff, and finding the Agreement is otherwise reasonable on its face, the Court finds there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees paid to his attorney. Therefore, the Court may approve the Agreement without separately considering the reasonableness of the fee paid to Plaintiff's counsel. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

In any event, the Court finds that the fees to be paid to Plaintiff's counsel are reasonable under the circumstances presented. The Court may rely on its own experience in determining reasonableness of fees and the Court does so here. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("The court, either trial or appellate, is itself an expert on the question [of reasonable hourly rates and hours expended] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an

independent judgment either with or without the aid of witnesses as to value." (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940))).

Accordingly, the Court finds the fees and costs to be paid to Plaintiff's counsel pursuant to the Agreement is reasonable and has not adversely affected the amounts paid to Plaintiff for his FLSA claims under the Agreement.

**C.** *Mutual Releases*

The Agreement provides for a mutual release "from any and all claims, demands, liabilities, and causes of action of any kind or nature, whether known or unknown, or suspected or unsuspected, which either Party now owns or holds, or has owned or held against each other . . . ." Agreement at ¶ 9.

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and, therefore, such releases "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351–52 (M.D. Fla. 2010) (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352; *see also Bradford v. Ancient City Grp. LLC*, No. 21-513, 2022 WL 549589, at *3 n.2 (M.D. Fla. Feb. 15, 2022) ("Some judges will not approve an agreement to settle a FLSA claim that includes a general release because, without an indication of the value of the released claims, the fairness and reasonableness of the compromise cannot be determined."); *King v. Premier Fire Alarms & Integration Sys., Installation Div., Inc.*, No. 20-60064, 2021 WL 7540777, at *1 (S.D. Fla. Dec. 17, 2021) (denying without prejudice joint motion to approve FLSA settlement where "the Agreement contains unbounded and

pervasive release provisions" requiring the plaintiff to "release many known and unknown legal claims that have nothing apparent to do with the current FLSA dispute"). Nevertheless, "if a plaintiff is given compensation in addition to that to which he or she is entitled under the FLSA, then general releases can be permissible." *Herrera v. FS Invs. of America, Inc.*, No. 20-2465, 2021 WL 1602120, at *2 (M.D. Fla. Apr. 8, 2021).

The Court notes the Agreement provides separate consideration for Plaintiff's general release in the form of payment of half of Plaintiff's portion of mediator's fees. Agreement at ¶ 4. Moreover, at the Fairness Hearing, counsel for the Parties represented that the releases were an important factor in the Parties' negotiations and that all parties agree the releases are fair and reasonable. Accordingly, because the mutual release provisions are supported by separate consideration, the Court finds they are permissible and do not undermine the fairness of the Agreement.

### D.  *Confidentiality Provision*

The Agreement contains a confidentiality provision that provides in relevant part:

> The Parties agree that, unless he/it is compelled to do so by law, he/it/they will not disclose to any other person any information regarding the existence or substance of this Agreement, except that he/it may discuss the terms of this Agreement with his/its tax advisor, or an attorney with whom the respective Party chooses to consult regarding his/its consideration of this Agreement. This agreement may be disclosed (1) as necessary in any action relating to a breach of this agreement; (2) for enforcement of this Agreement; (3) to counsel for the Parties; (4) to the Parties respective Accountant(s); (5) for reporting to Taxing authorities; (6) the Parties' respective spouse(s); and/or (7) when otherwise required by law, provided that such individual agrees to keep the disclosed information strictly confidential and to not disclose it to any other person.

Agreement at ¶ 11.

Confidentiality provisions in FLSA settlement agreements are often rejected by district courts because courts consider them to "thwart Congress's intent to ensure widespread

compliance with the FLSA." *Herrera*, 2021 WL 1602120, at *2 (citing cases). Moreover, "[j]udicial records are presumed to be public documents because '[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case.'" *Smith v. Target Corp.*, No. 21-80307-CIV, 2021 WL 5366876, at *1 (S.D. Fla. Nov. 18, 2021) (quoting *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992)). Therefore, a confidentiality provision in an FLSA settlement agreement "both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA right." *Mingo v. Ironclad Projects, LLC*, No. 19-CIV-62202, 2021 WL 8894997 at *4 (S.D. Fla. Mar. 1, 2021) (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)).

At the Fairness Hearing, the Court heard from counsel regarding the confidentiality provision. The Parties agree that the confidentiality provision is fair and reasonable, and the Parties agree that, despite the provision, the terms of their agreement may remain available in the public record. Further, the Court notes the confidentiality provision is supported by separate consideration as the CES Defendants agreed to pay half of Plaintiff's portion of mediator's fees. Agreement at ¶ 4. Under the circumstances presented here, the Court finds that the confidentiality provision, which is supported by separate consideration, does not undermine the fairness of the Agreement and is permissible.

### E.  *No Re-Employment Provision*

The Agreement also contains a "No Re-Employment" provision which provides:

> As further consideration for the payments described above, Plaintiff agrees that, because of circumstances unique to him (including his irreconcilable differences with the Employers), he is not qualified for re-employment with the Employers now or in the future and promise[s] that he will not knowingly apply for or accept future employment with the Employers; and that in the event he does apply for such employment with the Employers, the Employers may reject

11

> his application legitimately and lawfully solely because he breached this promise and/or may thereafter terminate his employment, which termination shall be considered a legitimate business reason that is neither retaliatory nor discriminatory.

Agreement at ¶ 14.

As the Middle District has specified, "an agreement not to employ a plaintiff in the future plainly injures the plaintiff, and when the parties' briefing does not address the issue of additional consideration, courts cannot determine whether the inclusion of such provision in a settlement agreement represents a fair and reasonable resolution of the parties' FLSA dispute." *Duffey v. Surfside Coffee Co.*, No. 20-cv-501, 2022 WL 766904, at *4 (M.D. Fla. Jan. 1, 2022) (citation and internal quotation marks omitted). Such provisions, nonetheless, may be approved where supported by sufficient additional consideration. *Id.* Moreover, "[n]o reemployment clauses are different from general releases, in that the plaintiffs, as former employees of the defendants, know exactly what they are relinquishing when they agree not to seek future employment with the defendants." *Holmes v. Swissport Fueling, Inc.*, No. 16-cv-669, 2019 WL 1370542, at *6 (M.D. Fla. Mar. 11, 2019) (citation omitted); *see also Cruz v. Winter Garden Realty, LLC*, No. 12-cv-1098, 2013 WL 4774617, at *3 (M.D. Fla. Sept. 4, 2013) ("Likewise, where a plaintiff indicates that she does not desire re-employment, the inclusion of a waiver of future employment does not render the settlement unfair.").

Here, as noted above, the Agreement provides separate consideration for Plaintiff's waiver of future employment with the CES Defendants. Namely, the CES Defendants agreed to cover half of Plaintiff's portion of mediator's fees. Agreement at ¶ 4. Moreover, during the Fairness Hearing, the Court addressed this provision with counsel, both of whom agreed the provision is fair and reasonable and enabled the Parties to reach a resolution in this matter. Additionally, Plaintiff's counsel asserted that Plaintiff fully understands the provision and its

implications and has no interest in seeking future employment with the CES Defendants. Accordingly, the Court finds the inclusion of a waiver of future employment provision is permissible and does not undermine the fairness of the Agreement under the circumstances presented.

    **F.**   *Non-Incitement Provision*

The Parties' proposed Agreement also contains a provision stating that Plaintiff agrees "to not incite or encourage any person, including, but not limited to, other current or former employees or contractors of the Employers, to assert any complaint or claim in federal or state court against the Employers." Agreement at ¶ 15. As with the general release, confidentiality, and waiver of future employment provisions, the Court notes that the non-incitement provision is supported by separate consideration in the form of payment of half of Plaintiff's portion of mediator's fees. *Id.* at ¶ 4. Federal courts have approved FLSA settlement agreements containing non-incitement clauses where such clauses are supported by separate consideration. *See, e.g.*, *Comandini v. Greystone Healthcare Mgmt. Corp.*, No. 19-cv-3101, 2021 WL 1724911, at *3 (M.D. Fla. Apr. 8, 2021) (approving non-incitement clause supported by independent consideration); *Pavlosky v. Winghouse XI, LLC*, No. 12-cv-1711, 2014 WL 12868917, at *4 (M.D. Fla. Apr. 22, 2014) ("[Plaintiffs] are each receiving an additional $2,000 in return for their general releases, agreements to maintain confidentiality, not disparage Defendants, and not incite additional claims against Defendants."), *report and recommendation adopted*, 2014 WL 12867027 (M.D. Fla. Apr. 23, 2014). Accordingly, the non-incitement provision is acceptable and does not render the Agreement unfair or unreasonable.

### G.  *Retention of Jurisdiction*

Lastly, the Parties request that the Court retain jurisdiction for forty-five (45) days to enforce the terms of the Agreement. Joint Motion at 8. "To retain jurisdiction to enforce a settlement agreement, the court itself must act; agreement by the parties is not enough." *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1279 (11th Cir. 2012). Accordingly, the Court will reserve jurisdiction to enforce the terms of the parties' settlement agreement.

## IV.   FINDINGS

The Court has considered the factors outlined in *Lynn's Food Stores*; the factual positions of the Parties; the existence (or lack thereof) of documents supporting or corroborating the Parties' positions; the strengths and weaknesses in the Parties' respective positions; and the Parties' desires to resolve their disputes without protracted litigation.

As set forth above, the Court finds that the settlement represents a genuine compromise of a bona fide dispute. Defendants, who deny liability, have agreed to pay Plaintiff more than they believe Plaintiff is due under the law, and the Parties have agreed to settle as a result of reasonable strategic and financial considerations.

The Court also finds that the settlement occurred in an adversarial context and that there are genuine coverage and computation issues in dispute. The Court further finds that the settlement reached by the Parties represents a fair and reasonable compromise by both sides and that the amount claimed as payment for Plaintiff's counsel's fees and costs is also reasonable.

## V. CONCLUSION

Based on the foregoing, it is hereby

ORDERED and ADJUDGED that the Joint Motion to Approve Settlement and Dismissal With Prejudice [ECF No. 40] is **GRANTED**. The Parties' Settlement Agreement and Release is **APPROVED** as fair and reasonable, and the case is **DISMISSED WITH PREJUDICE** as to Defendants Contractors Electrical Services, Inc., and Leonardo Rodriguez. It is further

ORDERED and ADJUDGED that the Court retains jurisdiction to enforce the terms of the Settlement Agreement.

**DONE and ORDERED** in Chambers at Miami, Florida this 12th day of July 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record