**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 21-cv-23709-COOKE/DAMIAN

WILSON VILLA,
*and other similarly situated individuals*,

    Plaintiff,

vs.

TURCIOS GROUP CORP,
HENRY TURCIOS, *individually*,
CONTRACTORS ELECTRICAL SERVICES,
INC., and LEONARDO RODRIGUEZ,

    Defendants,
_____/

**ORDER GRANTING THE PARTIES' JOINT MOTION FOR ENTRY OF ORDER APPROVING SETTLEMENT AND DISMISSING CASE WITH PREJUDICE AS TO DEFENDANTS TURCIOS GROUP CORP AND HENRY TURCIOS [ECF NO. 42]**

THIS CAUSE is before the Court on Plaintiff, Wilson Villa's ("Plaintiff"), and Defendants, Turcios Group Corp.'s ("Turcios Group"), and Henry Turcios' ("Mr. Turcios"), (collectively, the "Turcios Defendants"), Joint Motion for Entry of Order Approving Settlement and Dismissing Case With Prejudice (the "Joint Motion"). [ECF No. 42]. This matter is before the Court upon the Parties' Joint Notice of Consent to Jurisdiction by United States Magistrate Judge. [ECF No. 46]. *See* 28 U.S.C. § 636(c).

The Court has considered the Joint Motion, the proposed Settlement Agreement and Release of FLSA Claims [ECF No. 42-2], the pertinent portions of the record, and relevant legal authorities. The Court also heard from the parties, who appeared through counsel, by Zoom, for a Fairness Hearing on July 12, 2022, and is otherwise fully advised in the premises.

For the reasons set forth below, the Joint Motion is granted, the Settlement Agreement approved, and the case dismissed with prejudice as to the Turcios Defendants.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 2021, Plaintiff brought a collective action against the Turcios Defendants to recover alleged unpaid overtime wages, liquidated damages, and attorney's fees and costs, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* [ECF No. 1]. In the Statement of Claim filed on November 11, 2021, Plaintiff alleged he is owed $35,644.60 in unpaid overtime wages for the relevant period of employment, plus an equal amount in liquidated damages under the FLSA. [ECF No. 5]. Therefore, the total amount Plaintiff alleged in the Statement of Claim is $71,289.20, inclusive of unpaid overtime wages and liquidated damages. *Id.*

On January 13, 2022, the Court held a Settlement Conference that resulted in an impasse. [ECF No. 20]. Thereafter, on February 24, 2022, Plaintiff filed a First Amended Complaint and added Contractors Electrical Services, Inc. ("CES"), and Leonardo Rodriguez ("Mr. Rodriguez") (collectively, the "CES Defendants"), as defendants. [ECF No. 25 (the "Amended Complaint")].

According to the allegations in the Amended Complaint, the Turcios Defendants and the CES Defendants hired Plaintiff as a full-time electrician from June 2013 through August 16, 2021. *Id.* at ¶¶ 18–19. For purposes of the FLSA claims, Plaintiff alleges the relevant period of employment is from October 2018 to August 2021, totaling 147 weeks. *Id.* at ¶ 17. Plaintiff alleges he was paid $18.00 per hour during this period[1] and that his overtime rate should be

---

[1] Notably, in the initial Complaint, Plaintiff alleges he was paid $13.50 per hour from October 18, 2018 to August 15, 2020, and was later paid $16.00 per hour from August 16, 2020 to his last day of employment. [ECF No. 1, at ¶¶ 9–12].

2

$27.00 per hour. *Id.* at ¶ 18. Plaintiff also alleges that Turcios Group and CES are a joint enterprise and acted as joint employers of Plaintiff. *Id.* at ¶¶ 12–13. Plaintiff claims he worked five days per week, Monday to Friday, from 6:30 A.M. to 4:30 P.M. (10 hours daily) for 95 weeks, from October 18, 2018, to August 15, 2020. *Id.* at ¶ 20. Plaintiff further claims that he worked six days per week on the same time schedule from August 16, 2020, through his last day of employment, on August 16, 2021. *Id.* at ¶ 21.

Based on these allegations, Plaintiff claims he worked a total of 47.5 hours per week during the 95-week period from October 2018 to August 2020 and 57 hours per week during his last year of employment with Defendants.[2] Despite working more than forty hours weekly during the relevant employment period, Plaintiff alleges Defendants did not pay him overtime wages (at the statutory time and a half rate of $27.00 per hour) for the hours he worked in excess of forty (40) hours per week. *Id.* at ¶ 23. Therefore, in the Amended Complaint (unlike the amount originally sought in the Statement of Claim), Plaintiff seeks a total of $43,105.50 in alleged unpaid overtime wages, plus an equal amount in liquidated damages, and attorney's fees and costs. *Id.* at ¶ 49.

Following a Court-ordered mediation held on April 29, 2022, Plaintiff reached separate settlement agreements with the Turcios Defendants and the CES Defendants, respectively. [ECF Nos. 38, 39]. On June 7, 2022, Plaintiff and the Turcios Defendants submitted the Joint Motion now before the Court seeking approval of the parties' proposed settlement agreement, pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th

---

[2] Plaintiff deducted a total of 2.5 hours of lunchtime each week during the 95-week period and 3 hours of lunchtime each week during the last year of employment. *Id.* at ¶¶ 20–21.

Cir. 1982), and dismissal of the action with prejudice conditioned upon the Court retaining jurisdiction to enforce the terms of the settlement agreement.[3] *See* Joint Motion at 8.

In the Joint Motion, the Turcios Defendants deny any and all liability regarding Plaintiff's claims, including the amount of alleged unpaid overtime compensation, and assert that Plaintiff was at all times properly compensated under the FLSA. *Id.* at 2. Although the Turcios Defendants dispute Plaintiff's allegations, they have agreed to pay Plaintiff in order to fully settle the disputed FLSA claims. *Id.* at 3. The Parties indicate that the settlement agreement they reached with respect to Plaintiff's FLSA claims represents "a fair and reasonable resolution" of the disputed claims and that the terms of the settlement, including those for attorney's fees and costs, which were negotiated separate and apart, are "acceptable" to both parties. *Id.* at 5. The Parties also point out other factors that contribute to the complexity of their dispute, including (1) whether the Turcios Defendants were Plaintiff's employer under the FLSA; (2) whether Plaintiff was an "independent contractor"; (3) whether Plaintiff worked the alleged number of hours on a weekly basis; (4) whether Plaintiff was in fact properly paid for all hours Plaintiff allegedly worked; (5) whether any alleged violations of the FLSA, if any, were willful; and (6) whether Defendant Turcios Group is in fact a covered enterprise under the FLSA. *Id.* at 5–6. The Joint Motion also indicates that the complexity, expense, and likely duration in litigating the disputed claims weigh in favor of

---

[3] As noted in the Joint Motion, the parties seek approval of the settlement agreement between Plaintiff and the Turcios Defendants, as Plaintiff's FLSA claims against the CES Defendants were settled separate and apart and addressed by a separate Motion for approval. *See* ECF No. 40. This Court previously granted the Motion for approval of the CES Defendants' settlement. *See* ECF No. 47.

approval of the settlement agreement, as the Parties were able to reach a settlement after considerable negotiation. *Id.* at 6.

## II. APPLICABLE LEGAL STANDARDS

Section 206 of the FLSA establishes the federally mandated minimum hourly wage, and Section 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. 29 U.S.C. §§ 206, 207. An employer who violates the FLSA is liable to its employee for both unpaid minimum wages or overtime compensation and for an equal amount in liquidated damages. 29 U.S.C. § 216(b). The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived" between employers and employees. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Nevertheless, there two ways in which claims arising under the FLSA can be settled or compromised by employees: (1) if the payment of unpaid minimum wage/overtime pay is supervised by the Secretary of Labor; or (2) in a private lawsuit brought by an employee against his or her employer, if the parties present the district court with a proposed settlement agreement and the district court enters a stipulated judgment after scrutinizing the settlement for fairness. *See* 29 U.S.C. 216(c); *Lynn's*, 679 F.2d at 1352–53.

The Eleventh Circuit has held that the compromise of FLSA claims is allowed under the following circumstances:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a

5

>reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's*, 679 F.2d at 1354. Thus, an employee may compromise a claim if the district court determines that the compromise "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355.

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee (*i.e.*, "internal" factors), and whether the settlement frustrates the purpose of the FLSA (*i.e.*, "external" factors). Factors considered "internal" include:

>(1) the existence of fraud or collusion behind the settlement;
>(2) the complexity, expense, and likely duration of the litigation;
>(3) the stage of the proceedings and the amount of discovery completed;
>(4) the probability of plaintiff's success on the merits;
>(5) the range of possible recovery; and
>(6) the opinions of the counsel.

*Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see also Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241–44 (M.D. Fla. 2010). There is a "'strong presumption' in favor of finding a settlement fair." *Walker v. Kirkman Mgmt., LLC*, No. 20-1149, 2022 WL 1037369, at * 2 (M.D. Fla. Mar. 18, 2022) (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)). Additionally, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

### III. DISCUSSION

With the foregoing in mind, the Court considers the Parties' proposed settlement agreement for fairness.

#### A. *The Settlement Amount*

Pursuant to the proposed Settlement Agreement and Release of FLSA Claims (the "Agreement"), the Turcios Defendants have agreed to pay Plaintiff a total sum of $4,000.00, which is comprised of $2,000.00 as "wages" and $2,000.000 as "liquidated damages." Agreement at ¶ 4a. The Turcios Defendants have also agreed to pay $3,500.00 to Plaintiff's counsel for attorney's fees and $500.00 in costs. *Id.* As set forth in the Agreement, the Turcios Defendants agree to pay the settlement amount in four installments, with the final payment due September 1, 2022. *Id.* at ¶ 4b.

As indicated above and in the Amended Complaint, Plaintiff sought $43,105.50 for alleged unpaid overtime wages and an equal amount in liquidated damages. The settlement amount, exclusive of the payment for attorney's fees and costs, is approximately five percent (5%) of the amount originally sought by Plaintiff. *See* Amended Complaint. However, because Plaintiff reached a separate settlement with the CES Defendants, for the same settlement amount ($4,000.00), Plaintiff is recovering approximately ten percent (10%) of his original claim. *See* ECF No. 40. Moreover, both parties are represented by counsel and agree the negotiated terms of the Agreement are fair and reasonable considering the strengths and weaknesses of the Parties' respective positions on the FLSA claims. *See* Joint Motion at 5–6.

The Court has scrutinized the terms of the Agreement considering the above referenced factors and heard from the Parties, through their counsel, at a Fairness Hearing held by Zoom on July 12, 2022. Based on the Parties' representations and their expressed

concerns regarding the alleged FLSA claims, the Court finds the settlement amount represents a fair and reasonable resolution of a bona fide dispute between the Parties under all the circumstances presented and that Plaintiff has not unfairly compromised his FLSA claims. The Court also finds the Agreement promotes the policy of encouraging settlement of litigation of FLSA claims. *Lynn's*, 679 F.2d at 1354.

Having found the settlement amount is fair and reasonable, the Court addresses the specific terms of the Agreement.

### B. *Attorney's Fees and Costs*

As part of the Agreement, Plaintiff's counsel will receive a total of $4,000.00 from the Turcios Defendants for attorney's fees and costs, including $3,500.00 toward attorney's fees and $500.00 toward costs. *See* Agreement at ¶ 4a. In an FLSA action, the court "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In the Joint Motion, the Parties point out that this amount was negotiated separately from the amount paid to Plaintiff for his FLSA claims, such that Plaintiff agreed the settlement amount was fair, separate and apart from consideration of the fees and costs paid to his counsel. *See* Joint Motion at 7.

Based on the Parties' representation that Plaintiff's attorney's fee was agreed upon separately and without regard to the amount paid to Plaintiff, and finding the Agreement is otherwise reasonable on its face, the Court finds there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees paid to his attorney. Therefore, the Court may approve the Agreement without separately considering the reasonableness of the fee paid to Plaintiff's counsel. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

In any event, the Court finds that the fees to be paid to Plaintiff's counsel, including the number of hours expended (35 hours) and the hourly rate ($400.00), are reasonable under the circumstances presented. *See* Joint Motion at 6–7. The Court may rely on its own experience in determining reasonableness of fees and the Court does so here. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("The court, either trial or appellate, is itself an expert on the question [of reasonable hourly rates and hours expended] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940))).

Accordingly, the Court finds the fees to be paid to Plaintiff's counsel pursuant to the Agreement is reasonable and has not adversely affected the amounts paid to Plaintiff under the Agreement.

### C.  *Mutual Releases*

The Agreement provides for a specific release of any and all FLSA claims Plaintiff may have against the Turcios Defendants. Agreement at ¶ 3a–b. Additionally, the Agreement provides an extensive mutual release of "any and all claims and actions" including but not limited to "claims arising out of Plaintiff's alleged employment or relationship with Defendants." *Id.* at ¶ 3c.

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and, therefore, such releases "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351–52 (M.D. Fla. 2010) (footnote omitted). As such, "[a]

9

compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352; *see also Bradford v. Ancient City Grp. LLC*, No. 21-513, 2022 WL 549589, at *3 n.2 (M.D. Fla. Feb. 15, 2022) ("Some judges will not approve an agreement to settle a FLSA claim that includes a general release because, without an indication of the value of the released claims, the fairness and reasonableness of the compromise cannot be determined."); *King v. Premier Fire Alarms & Integration Sys., Installation Div., Inc.*, No. 20-60064, 2021 WL 7540777, at *1 (S.D. Fla. Dec. 17, 2021) (denying without prejudice joint motion to approve FLSA settlement where "the Agreement contains unbounded and pervasive release provisions" requiring the plaintiff to "release many known and unknown legal claims that have nothing apparent to do with the current FLSA dispute"). Nevertheless, "if a plaintiff is given compensation in addition to that to which he or she is entitled under the FLSA, then general releases can be permissible." *Herrera v. FS Invs. of America, Inc.*, No. 20-2465, 2021 WL 1602120, at *2 (M.D. Fla. Apr. 8, 2021).

The Court notes that the Agreement does not explicitly provide separate consideration for Plaintiff's general release, and the Parties do not address the general release provisions in their Joint Motion. However, at the Fairness Hearing, the Court addressed the release provisions of the Agreement with the Parties. Counsel represented that the releases were an important factor in the Parties' negotiations and that all parties agree the releases are fair and reasonable. Accordingly, the Court finds that the mutual release provisions do not undermine the fairness of the Agreement.

### D. *Confidentiality Provision*

The Agreement contains the following confidentiality provision:

> The parties agree to confidentiality to the extent allowed by law or permitted by the Court. Subject to that, despite the fact that this Agreement could be made

10

>part of the Court record, PLAINTIFF agrees and understands that the circumstances surrounding this lawsuit, his alleged employment with DEFENDANTS, and the Agreement are strictly and absolutely confidential. Notwithstanding any notations or filings in the judicial record, PLAINTIFF promises that he will not disclose the fact of or terms of this Agreement to anyone unless ordered to do so by a court of competent jurisdiction. As is the case with all other provisions of this Agreement, Confidentiality is a material condition of this Agreement. PLAINTIFF agrees not to disclose or discuss this Agreement, the circumstances related thereto, or any information regarding the existence or substance of this Agreement to anyone except to his spouse, attorney and accountant with whom he chooses to consult regarding the execution of this Agreement. Otherwise, upon inquiry, a party is to state "the matter was resolved".

Agreement at ¶ 5.

Confidentiality provisions in FLSA settlement agreements are often rejected by district courts because courts consider them to "thwart Congress's intent to ensure widespread compliance with the FLSA." *Herrera*, 2021 WL 1602120, at *2 (citing cases). Moreover, "[j]udicial records are presumed to be public documents because '[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case.'" *Smith v. Target Corp.*, No. 21-80307-CIV, 2021 WL 5366876, at *1 (S.D. Fla. Nov. 18, 2021) (quoting *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992)). Therefore, a confidentiality provision in an FLSA settlement agreement "both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA right." *Mingo v. Ironclad Projects, LLC*, No. 19-CIV-62202, 2021 WL 8894997 at *4 (S.D. Fla. Mar. 1, 2021) (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)).

At the Fairness Hearing, the Court heard from counsel regarding the confidentiality provision. Although no separate consideration was given to Plaintiff for this provision, the Parties agree that the confidentiality provision is fair and reasonable, and the Parties agree

11

that, despite the provision, the terms of their Agreement may remain available in the public record. Accordingly, under the circumstances presented here, the Court finds that the confidentiality provision does not undermine the fairness of the Agreement.

### E. *No Re-Hire Provision*

The Agreement also contains a "No Re-Hire" provision which provides:

> Plaintiff hereby agrees and recognizes: (a) that Plaintiff's employment with Defendants has ended and Plaintiff will not apply for or otherwise seek employment with Defendants or its divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners and successors; and (b) that Defendants have no obligation to employ, hire, reinstate or otherwise engage Plaintiff in the future. Plaintiff further agrees and recognizes that if Plaintiff applies and/or is hired by Defendants or its affiliated entities in the future, this Agreement is sufficient and appropriate legal grounds for denying employment and/or termination Plaintiff's employment regardless of whether the entity is specifically mentioned herein. The Parties further agree that any future acts by Defendants in denying Plaintiff employment, shall not be construed as retaliation pursuant to 29 U.S.C. 215(a)(3).

Agreement at ¶ 9. The Joint Motion does not address this provision or whether additional consideration was provided to Plaintiff for it.

As the Middle District has specified, "an agreement not to employ a plaintiff in the future plainly injures the plaintiff, and when the parties' briefing does not address the issue of additional consideration, courts cannot determine whether the inclusion of such provision in a settlement agreement represents a fair and reasonable resolution of the parties' FLSA dispute." *Duffey v. Surfside Coffee Co.*, No. 20-cv-501, 2022 WL 766904, at *4 (M.D. Fla. Jan. 1, 2022) (citation and internal quotation marks omitted). Such provisions, nonetheless, may be approved where supported by sufficient additional consideration. *Id.* Moreover, "[n]o reemployment clauses are different from general releases, in that the plaintiffs, as former employees of the defendants, know exactly what they are relinquishing when they agree not to seek future employment with the defendants." *Holmes v. Swissport Fueling, Inc.*, No. 16-cv-

669, 2019 WL 1370542, at *6 (M.D. Fla. Mar. 11, 2019) (citation omitted); *see also Cruz v. Winter Garden Realty, LLC*, No. 12-cv-1098, 2013 WL 4774617, at *3 (M.D. Fla. Sept. 4, 2013) ("Likewise, where a plaintiff indicates that she does not desire re-employment, the inclusion of a waiver of future employment does not render the settlement unfair.").

Here, the Agreement does not explicitly identify separate consideration for Plaintiff's waiver of future employment with Defendants. However, during the Fairness Hearing, the Court addressed this provision with counsel, both of whom agreed the provision is fair and reasonable and enabled the Parties to reach a resolution in this matter. Moreover, Plaintiff's counsel asserted that Plaintiff fully understands the provision and its implications and has no interest in seeking future employment with Defendants. Accordingly, the Court finds the inclusion of a waiver of future employment provision, despite the lack of specific additional consideration, does not undermine the fairness of the Agreement under the circumstances presented.

F. *Retention of Jurisdiction*

In the Joint Motion, the Parties request that the Court retain jurisdiction to enforce the terms of the Agreement. Joint Motion at 8. "To retain jurisdiction to enforce a settlement agreement, the court itself must act; agreement by the parties is not enough." *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1279 (11th Cir. 2012). Accordingly, the Court will reserve jurisdiction to enforce the terms of the parties' settlement.

IV. **FINDINGS**

The Court has considered the factors outlined in *Lynn's Food Stores*; the factual positions of the Parties; the existence (or lack thereof) of documents supporting or

corroborating the Parties' positions; the strengths and weaknesses in the Parties' respective positions; and the Parties' desires to resolve their disputes without protracted litigation.

As set forth above, the Court finds that the settlement represents a genuine compromise of a bona fide dispute. Defendants, who deny liability, have agreed to pay Plaintiff more than they believe Plaintiff is due under the law, and the Parties have agreed to settle as a result of reasonable strategic and financial considerations.

The Court also finds that the settlement occurred in an adversarial context and that there are genuine coverage and computation issues in dispute. The Court further finds that the settlement reached by the Parties represents a fair and reasonable compromise by both sides and that the amount claimed as payment for Plaintiff's counsel's fees and costs is also reasonable.

### V. CONCLUSION

Based on the foregoing, it is hereby

ORDERED and ADJUDGED that the Joint Motion for Entry of Order Approving Settlement and Dismissing Case With Prejudice [ECF No. 42] is **GRANTED**. The Parties' Settlement Agreement and Release [ECF No. 42-2] is **APPROVED** as fair and reasonable, and the case is **DISMISSED WITH PREJUDICE** as to Defendants Turcios Group Corp and Henry Turcios. It is further

ORDERED and ADJUDGED that the Court retains jurisdiction to enforce the terms of the Settlement Agreement. It is further

ORDERED and ADJUDGED that the Clerk shall **CLOSE** this case, and all pending motions, if any, are **DENIED AS MOOT**.

**DONE and ORDERED** in Chambers at Miami, Florida this 12th day of July 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of Record